**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| RONNIE THOMAS,<br><br>            Plaintiff,<br><br>            v.<br><br>DISTRICT OF COLUMBIA,<br><br>            Defendant. | Civil Action No. 10-913 (BAH)<br><br>Judge Beryl A. Howell |

<u>**MEMORANDUM OPINION**</u>

　　　This action was brought by the original plaintiff, Angela Brooks, against the defendant

District of Columbia ("the District") pursuant to the Individuals with Disabilities Education

Improvement Act ("IDEIA"), 20 U.S.C §§ 1400, *et seq*., on behalf of her then-minor child,

Ronnie Thomas, seeking to compel the District of Columbia to issue a revised Individualized

Education Plan ("IEP") for her daughter consistent with an August 2009 vocational evaluation.[1]

Although the merits of the plaintiff's claims have already been resolved, the plaintiff now seeks

attorney's fees from the defendant under the IDEIA's fee-shifting provision, 20 U.S.C

§ 1415(i)(3)(B).  The primary questions before the Court are the appropriate hourly rate to apply

and the appropriate number of hours to permit for certain tasks.

## I.　　BACKGROUND

　　　The original plaintiff, Ms. Brooks, commenced this lawsuit on June 3, 2010, seeking

declaratory and injunctive relief for the District's failure to review a vocational evaluation of her

daughter (Ms. Thomas) in a timely manner, the District's subsequent failure to review and revise

Ms. Thomas's IEP, and the District's failure to provide a free appropriate public education

---

[1] On January 28, 2012, Ronnie Thomas was substituted as the real party in interest in this action.  *See* Order dated
Jan. 28, 2012, ECF No. 33.

("FAPE").  *See* Compl. ¶¶ 1, 11–22, ECF No. 1.  The case was referred to a Magistrate Judge for a Report and Recommendation, which issued on August 10, 2011, recommending that the plaintiff be granted summary judgment on her three claims.  *See* Report & Recommendation dated Aug. 10, 2011, at 16, ECF No. 21.  On August 31, 2011, the Court adopted the Report and Recommendation in full, granting summary judgment to the plaintiff in part, and denying summary judgment to the District.  *See* Order dated Aug. 31, 2011, ECF No. 22.  In connection with the defendant's motion for reconsideration of that decision, the Court recited the factual background underlying the plaintiff's substantive claims in a previous memorandum opinion, which the Court incorporates here by reference.  *See Brooks v. District of Columbia*, 841 F. Supp. 2d 253 (D.D.C. 2012).

Relevant to the matter currently before the Court, the plaintiff filed a motion for attorney's fees and costs, which the Court also referred to a Magistrate Judge for report and recommendation.  *See* Pl.'s Mot. for Fees & Costs ("Pl.'s Mot."), ECF No. 35; *see also* Order dated Mar. 16, 2012, ECF No. 36.  In her motion, the plaintiff sought $43,589 in attorney's fees and costs associated with the litigation of her IDEIA claims.  *See* Pl.'s Mot. at 1.  The plaintiff based her request on a line-item accounting of tasks performed by her counsel, Douglas Tyrka, throughout the litigation, and the rates were based upon an adjusted version of the so-called *Laffey* matrix—a matrix of hourly rates for attorneys of varying experience levels approved by this Circuit.[2]  *See* Mem. in Supp. of Pl.'s Mot. for Fees & Costs ("Pl.'s Mem.") at 4–7, ECF No.

---

[2] There are two versions of the *Laffey* matrix:

> One version, which is maintained by the Civil Division of the Office of the United States Attorney . . . , calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the United States Consumer Price Index ('CPI') for the Washington, D.C. area for the prior year, and then rounding that rate to the nearest multiple of $5.  A second, slightly different version of the *Laffey* Matrix . . . , also in use in the Washington, D.C. area, calculates the matrix rates for each year by using the legal services component of the CPI rather than the general CPI on which the U.S. Attorney's Office Matrix is based.

35; Pl.'s Mot. Ex. 1, ECF No. 35-1.  *See generally Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).  The District opposed the magnitude of the relief sought by the plaintiff, arguing that the adjusted *Laffey* rates were too high for a "routine administrative litigation" and that many of the specific charges claimed were unreasonable, excessive, or overly vague.  *See* Mem. of P. & A. in Opp'n to Pl.'s Mot. for Fees & Costs ("Def.'s Opp'n") at 3–16, ECF No. 38.  As a result, the District argued that the plaintiff's fee award should be reduced to $8,437.  *See id.* at 17.

The Report and Recommendation ("R&R"), issued on August 31, 2012, recommended that the plaintiff be granted attorney's fees at 75% of the standard *Laffey* rates, rather than the 100% of the adjusted *Laffey* rates requested, and that charges for certain tasks be reduced, resulting in a total fee award of $19,546.88.  *See* Report & Recommendation dated Aug. 31, 2012 ("R&R") at 8, 12–13, 17, ECF No. 41.  The R&R recognized that the plaintiff had submitted evidence that her counsel's hourly rates were significantly higher ($609 per hour), *id.* at 3, 8, but nevertheless concluded that the 75% figure ($307.50–$326.25) was "fair and just," *id.* at 8.

At the outset, the R&R cited guidance promulgated by the defendant—in particular the District of Columbia Public Schools ("DCPS")—as support for the recommendation.  *See id.* at 7–8.  The DCPS guidance uses 75% of the standard *Laffey* rates as a measure of reasonable hourly rates in IDEIA matters.  *See* R&R Ex. 1, at 2, ECF No. 41-1.  Although acknowledging

---

*Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) (citation and internal quotation marks omitted).  The adjusted *Laffey* matrix, or "*Salazar* matrix"—named after *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), which approved of the adjusted matrix—results in higher rates because it uses the legal services component of the national CPI rather than the general CPI for the metropolitan Washington, D.C. area.  *See Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 176 (D.D.C. 2010).  The plaintiff in the instant action submitted her fee petition based on an adjusted *Laffey* rate ($609), and the R&R recommended awarding the plaintiff fees at three-quarters of the standard *Laffey* rates ($307.50–$326.25).  The Court will refer to the matrix based on the general CPI as the "standard" *Laffey* matrix and the matrix based on the legal services component of the CPI as the "adjusted" *Laffey* matrix.

that plaintiff's counsel could "complain that he is being forced to work at a 25% discount from his hourly rates" and that "the lawyer's hourly rate is a vital consideration," the R&R pointed to several policy-based considerations in support of the conclusion that the 75% figure was the appropriate one.  R&R at 8.  First, the R&R noted that the public interest in "encouraging lawyers to take on IDEA cases for families who cannot afford them . . . must be balanced against the reality that, ironically, those lawyers and children . . . are competing for the same dollars from a finite appropriation."  *Id.* at 9.  Hence, the R&R concluded that considerations of "the public fisc" supported the discounted 75% figure.  *Id.*  Next, the R&R identified the advantages of certainty that would result if courts used a uniform rate for IDEIA cases, stating that "[w]hile the lawyers may be receiving less . . . they know exactly what they will receive . . . . [and] [t]hey also know that they will receive it as soon as their vouchers are submitted and approved."  *Id.*  Third, the R&R opined that "a system based on 75% of the Laffey rate should result in fewer challenges in this Court to the amounts paid by DCPS" because the "prompt payment" by DCPS would mean that "the Court will see few if any IDEA fees cases."  *Id.* at 9–10.  Finally, the R&R determined that the 75% figure would be sufficient "to provide the bar sufficient encouragement to take IDEA cases" because it would still yield "several thousand dollars per day" for the plaintiffs' bar, assuming a forty-hour work week at those rates.  *Id.* at 10.

In addition to this discussion of the appropriate hourly rate, the R&R also concluded that certain charges submitted by the plaintiff were excessive and needed to be reduced.  Specifically, the R&R found that the plaintiff's counsel should have been able to research, outline, draft, and file the plaintiff's 16-page memorandum of law in support of her motion for summary judgment in 8 hours rather than the 13.75 hours that was recorded.  *See id.* at 11–12.  Further, the R&R concluded that "it should not have taken an attorney with [plaintiff's counsel's] legal experience

(over 13 years in 2012) 6.5 hours to complete" a petition for attorney's fees and costs.  *Id.* at 13.

Rather, the R&R proposed a reduction in the hours for that task to three hours.  *Id.*  Finally, the

R&R rejected the District's arguments that (1) certain entries were vague, (2) certain entries

(*e.g.*, researching and drafting the petition for fees) were clerical in nature, and (3) certain entries

were too remote in time to be compensable.  *Id.* at 11–14.[3]  The R&R further recommended that

the rate applied to the work of the plaintiff's counsel should be the rate that applied at the time

the work was completed, rather than applying the current rate to all of the work claimed.  *Id.* at

6–7.

Currently pending before the Court is the plaintiff's timely filed objection to the R&R.  In

her objection, the plaintiff argues that the R&R's conclusions regarding the reasonable hourly

rate and the reasonable number of hours were in error.  *See* Pl.'s Objections to Report &

Recommendation Regarding Att'ys' Fees ("Pl.'s Objection"), ECF No. 44.  For the reasons

discussed below, the Court sustains the plaintiff's objections and enters judgment that differs

accordingly from that recommended in the R&R.

## II.   LEGAL STANDARD

Normally, when, as here, the Court has referred a non-dispositive pretrial motion to a

Magistrate Judge for decision, a district judge "may modify or set aside any portion of a

magistrate judge's order . . . found to be clearly erroneous or contrary to law."  LCvR 72.2(c).

This Local Civil Rule is consistent with Federal Rule of Civil Procedure 72(a), which provides

for the referral of a pretrial matter "not dispositive of a party's claim or defense" to a Magistrate

---

[3] The District elected not to file any timely objection to the R&R, and therefore it waived its right to appeal from an Order of this Court adopting the findings and recommendations of the R&R.  *See* LCvR 72.3(b); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Charter Oil Co. v. Am. Emp'rs' Ins. Co.*, 69 F.3d 1160, 1172 (D.C. Cir. 1995) (acknowledging that "a failure to object to a magistrate judge's ruling barred review of that ruling on appeal").

Judge to "hear and decide," any part of which a district judge must "modify or set aside" if it is "clearly erroneous or is contrary to law."  FED. R. CIV. P. 72(a).

The Federal Rules of Civil Procedure further state that a court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."  FED. R. CIV. P. 54(d)(2)(D); *see also David v. District of Columbia*, 252 F.R.D. 56, 58 (D.D.C. 2008) (noting "the limited jurisdiction granted by Congress to a magistrate judge in Federal Rules 54(d)(2)(D) and 72(b) to issue a recommendation on a motion for attorneys' fees").  Rule 72(b), much like Local Civil Rule 72.3, provides that "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "[t]he district judge may accept, reject, or modify the recommended disposition."  FED. R. CIV. P. 72(b)(3); *see also* LCvR 72.3(c) ("A district judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made . . . .").

## III.    DISCUSSION

The IDEIA permits the parents of a disabled child to recover "reasonable attorneys' fees" insofar as they are "a prevailing party."  20 U.S.C. § 1415(i)(3)(B).  "A court's determination of the appropriate attorney's fees, in other words, is based on a two-step inquiry."  *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).  "First, the Court must determine whether the party seeking attorney's fees is the prevailing party."  *Id.*  "Second, the court must determine whether the attorney's fees sought are reasonable."  *Id.*  There is no dispute in this action that the plaintiff is a "prevailing party," and therefore the only question is whether the fees sought by the plaintiff are reasonable.

"The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). "[T]he fee petitioner bears the burden of establishing all elements of his entitlement." *In re North (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995). "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). The Court will first address the plaintiff's objections to the R&R regarding the reasonable hourly rate, and then the Court will discuss the plaintiff's objections to the number of hours reasonably expended.

A.    **Reasonableness of the Hourly Fee**

"[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements:  the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). "[P]revailing parties must offer evidence to demonstrate their attorneys' experience, skill, reputation, and the complexity of the case they handled." *Id.* at 1108. They must also "produce data concerning the prevailing market rates in the relevant community for attorneys of reasonably comparable skill, experience, and reputation," which courts have consistently recognized "is undoubtedly a difficult assessment." *Id.*; *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (recognizing that "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult"). "In order to demonstrate [the prevailing market rate], plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of

prevailing market rates in the community." *Covington*, 57 F.3d at 1109; *see also Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) ("commend[ing]" the use of the *Laffey* matrix); *Rapu v. D.C. Pub. Sch.*, 793 F. Supp. 2d 419, 424 (D.D.C. 2011) ("[T]he *Laffey* Matrix may demonstrate the prevailing market rate . . . .").

The vast majority of the plaintiff's objections to the R&R relate to the reasonableness of the hourly fee. Primarily, the plaintiff objects that "the Magistrate Judge devoted his analysis to factors never mentioned by the Court of Appeals in <u>Covington</u>, factors which are almost entirely speculative." Pl.'s Objection at 2. The plaintiff argues that the predictions articulated by the R&R regarding the benefits of imposing a uniform rate at 75% of the standard *Laffey* rate "are demonstrably wrong" and "for the most part illogical and inappropriate." *Id.* Furthermore, the plaintiff objects that "the Magistrate Judge considered this case not on its own merits, but as identical to and part of a group of unrelated and significantly different cases." *Id.* Finally, the plaintiff objects that although "the Magistrate Judge addressed the alleged benefits of uniformity of decisions [about attorney's fees] as if it is readily achievable," he "did not fairly represent the full body of" opinions within this Court about the use of the *Laffey* rates in IDEIA cases. *Id.* at 11.

The appropriate framework for evaluating the reasonableness of an hourly rate for a fee petition comes from the D.C. Circuit's decision in *Covington*. That case, as the R&R noted, lays out three elements that a petitioner must establish through competent evidence. As both the Supreme Court and the Circuit have held, "'[w]hen . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee contemplated by [the fee-shifting statute].'" *Covington*, 57 F.3d at 1109 (quoting *Blum*, 465 U.S. at 897). Once the petitioner has satisfied

8

this initial burden, the plaintiff's rates and hours are "properly accorded a presumption of reasonableness" and "the Government must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate." *Id.* at 1110 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)).  In this case, although the R&R briefly summarized the evidence offered by the plaintiff to satisfy her burden, *see* R&R at 3–4, the R&R did not conclude one way or the other whether the plaintiff had satisfied her burden or whether the defendant had succeeded in rebutting the plaintiff's evidence.  Therefore, the Court will first discuss the burden-shifting framework articulated in *Covington*.

The record before the Court establishes that the plaintiff has produced sufficient evidence to demonstrate the billings practices, skill, experience, and reputation of her counsel, Mr. Tyrka, and the plaintiff has also submitted evidence sufficient to demonstrate the prevailing market rates in the community.  In a sworn statement submitted in support of the fee petition, Mr. Tyrka describes his billing practices, as well as his expertise and experience in special education litigation.  *See* V.S. of Douglas Tyrka ("First Tyrka Statement") ¶¶ 4–5, 9–11, ECF No. 35-2.  Mr. Tyrka has worked as a litigator since graduating law school in 1998, and he has specialized in the field of special education law since 2003.  *Id.* ¶ 10.  Through 2008, Mr. Tyrka's firm has been prolific in the Washington, D.C. special education law community, representing "more than 200 special education cases each year."  *Id.* ¶ 11.  With respect to his billing practices, Mr. Tyrka avers that his firm "has always matched its hourly rates to those in what is commonly known as the 'adjusted *Laffey* matrix,'" which he says at least some of his clients pay "regardless of whether reimbursement is ever obtained."  *Id.* ¶¶ 4–5.  Finally, as to prevailing market rates, the plaintiff has submitted the adjusted *Laffey* matrix, which provides that rates for an attorney of

Mr. Tyrka's experience (11–19 years) were $569–$609 from 2009 to 2012, when the relevant work was performed.  *See* Pl.'s Mot. Ex. 3, ECF No. 35-3; *see also Covington*, 57 F.3d at 1109 (holding that petitioner may "point to such evidence as an updated version of the *Laffey* matrix" to demonstrate the prevailing market rate).

The one potential shortcoming in the plaintiff's evidence was in establishing "that the requested rates *are in line* with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Covington*, 57 F.3d at 1109 (emphasis added) (quoting *Blum*, 465 U.S. at 896 n.11).  In particular, although Mr. Tyrka's sworn statement avers that adjusted *Laffey* rates "conform to those of attorneys in this jurisdiction of comparable skill and experience," First Tyrka Statement ¶ 4, he does not address whether adjusted *Laffey* rates conform to the prevailing rates for lawyers who primarily practice in the field of special education law, or IDEIA law in particular.  Ultimately, this is a question of, *inter alia*, the complexity of both this case in particular and IDEIA litigation more generally, which was a major point of contention between the parties during their briefing on the motion for attorney's fees and has garnered a wide array of opinions from this Court.

The R&R discussed this issue, noting a simple dichotomy within this Court's decisions, stating "[w]here the issues are complex, the full <u>Laffey</u> rate has been awarded," and "[w]here the issues are not complex . . . use of the <u>Laffey</u> matrix has not been considered appropriate and instead, some fraction of the <u>Laffey</u> rate has been awarded."  R&R at 5.  The R&R then discussed at length DCPS's guidelines for fees in IDEIA cases, noting that the guidelines rely upon three decisions from this Court[4] to impose the 75% *Laffey* rate, and concluding that because DCPS has "expressed its agreement with the decisions of this Court that a rate of 75% of

---

[4] The three decisions are *Cousins v. District of Columbia*, No. 11-172, 2012 WL 1439033 (D.D.C. Apr. 26, 2012) (Kay, Mag. J.), *Wright v. District of Columbia*, No. 11-384, 2012 WL 79015 (D.D.C. Jan. 11, 2012) (Kay, Mag. J.), and *Rooths v. District of Columbia*, 802 F. Supp. 2d 56 (D.D.C. 2011) (Friedman, J.).

_Laffey_ is a fair and just one . . . . it is equally as fair and just for work . . . to be compensated at that same rate."[5]  _Id._ at 6–8.  The plaintiff is correct, however, that the R&R's reasoning on this point does not acknowledge the diversity of opinions within this Circuit on the topic, which the Court discusses in more detail below.  Also, although the R&R recognized that the complexity of an IDEIA case is a critical factor in determining the appropriate hourly rate in such cases, _see_ R&R at 5, the R&R did not discuss the complexity of this case or base its recommendation on that ground.  Rather, it appears that, in concluding that 75% of the standard _Laffey_ rate was appropriate, the R&R presumed that this case was not complex because, as its discussion of the case law stated, "some fraction of the _Laffey_ rate has been awarded" when "the issues are not complex."  _Id._  Therefore, the plaintiff is right to object that although "the Magistrate Judge determined that the applicability of a version of the _Laffey_ Matrix to IDEA fee disputes turns on the complexity of the individual case . . . . the Magistrate Judge never considered the issue in this case."  Pl.'s Objection at 7.

In addition to the question of whether this case was complex, the plaintiff goes further in objecting to the notion that complexity is a critical consideration at all, arguing that there is a robust body of case law from this Court "award[ing] fees based on _Laffey_ rates without addressing the complexity of the individual case."  _Id._ at 11 (collecting cases).  The plaintiff notes that "[t]hough this is not a matter of a court-wide vote, the majority of judges who have addressed the question have applied 100% of the USAO _Laffey_ [rates], regardless of the alleged complexity of the individual case."  _Id._ at 13.  Additionally, the plaintiff contends that "setting the rate based on complexity" is error because "fees for simple cases are already discounted."  _Id._  By this, the plaintiff appears to mean that lawyers like Mr. Tyrka who specialize in IDEIA cases

---

[5] The R&R was primarily concerned with the question of whether DCPS's 2012 guidance should apply to invoices submitted prior to June 1, 2012, _see_ R&R at 7–8—an issue neither party raised and which the Court concludes is not necessary to decide the plaintiff's motion.

"bill[] less for each task than would have a less experienced IDEA litigator," and thus "the District asks to double that deduction, to apply lower rates to fewer hours due to supposed simplicity."  *Id.*

**1.    *The Laffey Matrix Is the Appropriate Starting Point for Calculating Attorney's Fees in IDEIA Cases***

First, the Court emphasizes that the award of reasonable attorney's fees under the IDEIA is a matter of judicial discretion.  *See* 20 U.S.C. § 1415(i)(3)(B)(i) (authorizing the court to award attorney's fees "in its discretion"); *accord Fisher v. Friendship Pub. Charter Sch.*, No. 10-886, 2012 WL 3090308, at *1 (D.D.C. July 31, 2012) ("Whether attorney's fees are 'reasonable' is a matter of judicial discretion, the objective measurement of which has divided courts within the D.C. Circuit.").  The exercise of the Court's discretion in this case is informed by a number of considerations, including the fact that "[c]ourts in this district routinely refer to the *Laffey* Matrix to determine the reasonableness of requested attorney's fees in IDEA actions."  *B.R. ex rel. Rempson v. District of Columbia*, 802 F. Supp. 2d 153, 164 (D.D.C. 2011) (Urbina, J.); *accord Parks v. District of Columbia*, No. 10-1460, 2012 WL 4475681, at *5 (D.D.C. Sept. 28, 2012) (Roberts, J.) ("Many courts find that the *Laffey* rate is presumptively reasonable."); *Jackson*, 696 F. Supp. 2d at 102 ("[N]umerous judges in this district have applied *Laffey* rates in the context of fee awards arising out of IDEA administrative proceedings.").[6]

The defendant argued in its opposition to the motion for attorney's fees that the plaintiff's attempt to justify *Laffey* rates "compar[es] 'apples to oranges'" because *Laffey* rates are reserved for "complex federal litigation," but IDEIA cases only involve "routine administrative litigation"

---

[6] *See also*; *Young v. District of Columbia*, No. 11-1041, 2012 WL 4466474, at *5 (D.D.C. Sept. 28, 2012) (Berman Jackson, J.) (applying *Laffey* rates to IDEIA litigation); *Fisher*, 2012 WL 3090308, at *5 (Lamberth, C.J.) (same); *Garvin v. District of Columbia*, 851 F. Supp. 2d 101, 107 (D.D.C. 2012) (Walton, J.) (same); *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 49 (D.D.C. 2012) (Rothstein, J.) (same); *Cox v. District of Columbia*, 754 F. Supp. 2d 66, 76 (D.D.C. 2010) (Kessler, J.) (same); *District of Columbia v. Jeppsen*, 686 F. Supp. 2d 37, 39 (D.D.C. 2010) (Leon, J.) (same); *Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 124 (D.D.C. 2004) (Collyer, J.); *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 26 (D.D.C. 2004) (Huvelle, J.) (same).

and thus "[t]he prevailing rates for attorneys practicing special education litigation is not measured by the *Laffey* Matrix."  Def.'s Opp'n at 3–4.  This argument, however, paints with brushstrokes that are far too broad.  It is important to understand that IDEIA cases take a variety of different litigation paths.  Although the defendant focused on the administrative origin of IDEIA litigation, many IDEIA administrative determinations are also appealed to federal district court, which come with all of the trappings of any other federal case—often involving the submission of voluminous administrative records and motions for summary judgment.  Even the administrative component of IDEIA litigation, however, which "typically require[s] testimony from education experts regarding whether a student has been denied a [FAPE] and the need for any compensatory educational services," cannot be dismissed as categorically routine or simple.  *See Jackson*, 696 F. Supp. 2d at 102.  Therefore, the District is incorrect to argue that full *Laffey* rates should never be applied to IDEIA litigation.  On the contrary, the *Laffey* rates serve as a useful and reasonable approximation of the prevailing market rates in the Washington, D.C. area, and therefore it is appropriate to use *Laffey* rates as a starting point for determining a reasonable hourly fee in IDEIA cases.  *See, e.g.*, *Covington*, 57 F.3d at 1109 ("Although fee matrices are somewhat crude . . . the matrices do provide a useful starting point"); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 45 (D.D.C. 2011) (using *Laffey* matrix as a "'starting point' for its analysis"); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 238 (D.D.C. 2011) (observing that *Laffey* matrix is "an appropriate baseline for any fee award"); *Rapu*, 793 F. Supp. 2d at 424 (using *Laffey* matrix as "the benchmark for prevailing market rates in this [IDEIA] case").

On the other hand, the plaintiff argues too much in suggesting that the Court should mechanically apply full *Laffey* rates as a matter of course merely because those rates represent

the prevailing market rates in the community.  *See* Pl.'s Objection at 11–13.  "[T]he prevailing market rate is but one of the elements needed to establish the reasonableness of a billing rate sought in a fee application," and therefore "the prevailing rates set forth in the *Laffey* Matrix provide *merely* a starting point for determining the reasonableness of a billing rate."  *Jackson*, 696 F. Supp. 2d at 104 (emphasis added).  The determination of whether a requested rate is reasonable "must be made in a case by case analysis."  *A.S.*, 842 F. Supp. 2d at 48.  Thus, starting with the presumption that *Laffey* rates represent the prevailing rates in the community, the Court must consider the other relevant factors articulated by the Circuit, such as the attorney's skill, experience, reputation, billing practices, and expertise, as well as the complexity of the litigation, to determine what rate is reasonable for this particular case.  *See Covington*, 57 F.3d at 1107–08.  Additionally, in line with Supreme Court precedent, the Court will consider whether the fees sought are "adequate to attract competent counsel."  *Blum*, 465 U.S. at 893–94 (citing S. Rep. No. 94-1011, at 6 (1976)).

### 2.	*Full Laffey Rates Are Justified in This Case*

The Court will now discuss the myriad factors relevant to determining what a reasonable fee is for the services performed by Mr. Tyrka in the instant action.  For the reasons discussed below, the Court concludes that the full amount of the standard *Laffey* rate is a reasonable hourly fee for this case.

#### a)	*Attorney Expertise*

At the outset, the Court discusses a consideration in the attorney's fees calculus that often goes unsung in the context of IDEIA litigation, which is the valuable expertise that the special education bar brings to the resolution of IDEIA cases.  IDEIA law can, at times, be remarkably complicated, and all parties involved—the District of Columbia, the Court, and most importantly the children and their families directly affected by the statute's provisions—benefit from the

expertise that specialized IDEIA counsel bring to bear upon these cases.  Yet, far more than

specialized legal knowledge is required to be an effective IDEIA lawyer.  As one court in this

Circuit has observed:

> [I]n order to handle special education cases effectively, counsel must know far more than IDEA law in order to cope with the obstructive and delaying practices of DCPS.  Sad to say, to be effective—i.e., to get services, education, and treatment for their young clients—it is essential that counsel understand the bureaucratic workings of that system, know competent and caring individuals in that system who can break logjams and obtain necessary evaluations, reports, and materials, and then assure provision of whatever FAPE is deemed appropriate.  To accomplish this goal takes diligence, perseverance, persuasiveness, and negotiating and inter-personal skills—as well as the traditional legal skills expected of any competent lawyer.

*Cox*, 754 F. Supp. 2d at 76.  Mr. Tyrka is no exception to this rule.  As indicated by his sworn

statement, for nearly ten years he has dedicated 95% of his practice to special education law,

which has included over 1,000 IDEIA administrative cases and 20 IDEIA federal cases.  *See*

First Tyrka Statement ¶ 10.

The Supreme Court has acknowledged that "the special skill and experience of counsel

should be reflected in the reasonableness of the hourly rates" because "the experience and special

skill of the attorney will require the expenditure of fewer hours than counsel normally would be

expected to spend on a particularly novel or complex issue."  *Blum*, 465 U.S. at 898.  The

plaintiff makes this precise point in her objection to the R&R.  *See* Pl.'s Objection at 13.  The

above principle fully applies to IDEIA litigation, where the expertise of counsel undoubtedly

results in less time being billed than would be billed by a general practitioner.  Since fewer hours

are billed, the hourly rate must be concomitantly increased to ensure that the resulting fee award

is not unreasonably low.  *See, e.g.*, *Blum* at 897 (cautioning that "there may be circumstances in

which the basic standard of reasonable rates multiplied by reasonably expended hours results in a

fee that is either unreasonably low or unreasonably high").

> b)    *The District's Track Record of Refusing Full and Timely Payment of Attorney's Fees*

Mr. Tyrka's continued dedication to IDEIA cases is all the more impressive considering the evidence the plaintiff has submitted regarding the acute financial challenges currently faced by special education lawyers in the District of Columbia.  Sworn statements by Mr. Tyrka and one of his former associates, Nicholas Ostrem, which have gone unrebutted by the defendant, reveal that the District of Columbia habitually avoids paying attorney's fees to victorious counsel at all costs.  *See* V.S. of Douglas Tyrka ("Second Tyrka Statement"), ECF No. 44-1; V.S. of Nicholas Ostrem ("Ostrem Statement"), ECF No. 44-2.  In particular, Mr. Tyrka avers that, since submitting bills to the District of Columbia for 232 IDEIA administrative cases from July 2007 to December 2008, the District failed to pay any amount toward 73 of those bills (31%), and the District only made partial payment for 125 of those bills (54%), leaving a meager 15% that were paid in full.  *See* Second Tyrka Statement ¶¶3–13.  Additionally, the District has "made no payments to [Tyrka] since June 2011 except as ordered by a court," and when the District had made partial payments without a court order in the past, those payments were only for approximately one-third of the amounts originally billed, on average.  *See id.* ¶¶ 15, 17.  Perhaps most disturbing, Mr. Tyrka states that, although he has obtained 21 court orders directing the District to make payments for attorney's fees since November 2011, 13 of those orders remain wholly unpaid despite the fact that the deadlines for payment directed by the court have all lapsed.  *See id.* ¶ 16.

The plaintiff's evidence also establishes that the District's pattern of avoiding payment for attorney's fees has left IDEIA litigators practicing in this jurisdiction with some difficult choices.  Mr. Tyrka states that in 2009, "having received no payments from DCPS in more than a year," he was forced to lay off his firm's entire staff and close his firm's offices.  *See id.* ¶ 24.

16

Since that time, Mr. Tyrka has functioned primarily as a solo practitioner. *Id.* What is more, the plaintiff's evidence indicates that this problem extends beyond Mr. Tyrka. One of the associates laid off by Mr. Tyrka was Mr. Ostrem, who now works for Brown & Associates—"the largest firm in the District whose practice is solely special education." Ostrem Statement ¶¶ 3, 5, 8. Brown & Associates has encountered similar obstinance from the District regarding the payment of attorney's fees: DCPS "has routinely failed to timely process and/or pay the invoices submitted by Brown & Associates, often times failing to process and/or make payment at all," and as a result the firm has 14 separate cases in this Court seeking payment for attorney's fees from the District, which represent 369 individual invoices. *Id.* ¶¶ 9–10. Additionally, the District inexplicably "stopped processing and/or paying all invoices submitted by Brown & Associates" in February 2012, which has resulted in the firm losing half of its 800 clients and the firm having to lay off two-thirds of its staff. *See id.* ¶¶ 13, 15–17.[7]

The Court reviews this disgraceful state of affairs for two reasons. First, the plaintiff's evidence reveals that the R&R's well-intentioned and logical assumptions about the benefits of endorsing a lower, but uniform, hourly rate for IDEIA cases, unfortunately do not reflect reality in this jurisdiction. For example, it is likely wishful thinking to hope that if victorious parties in IDEIA cases were uniformly awarded 75% of standard *Laffey* rates, the District would promptly settle and pay fee petitions in such cases. *See* R&R at 9. It is also likely nothing more than an academic exercise to assume that an IDEIA litigator will be able to secure attorney's fees from the District "at the rate of several thousand dollars per day," R&R at 10, because such a result would require that the District pay invoices in full and on time.

---

[7] The plaintiff's evidence also reveals that an investigation conducted by the District's own Office of the State Superintendent of Education ("OSSE") concluded that, during a one-year period in which DCPS entered into 401 settlement agreements regarding attorney's fees in IDEIA cases, DCPS waited more than 120 days to effect payment in at least 72 of those cases (18%). *See* Pl.'s Objection Ex. 3, at 1, ECF No. 44-3.

Additionally, the District's apparent behavior highlights the well-established principle that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010).  À propos to this principle, the plaintiff observes that, due to the District's practices regarding the payment of attorney's fees in IDEIA cases, IDEIA litigators "are quickly becoming extinct," which is supported by the evidence of the financial hardship faced by IDEIA litigators in this jurisdiction.  Pl.'s Objection at 11.  Although the defendant quickly rejects the plaintiff's evidence as a "doomsday scenario[]" that is "not worthy of a response" and a sideshow designed to "distract from the actual issue in this case," Def.'s Reply to Pl.'s Objection to R&R ("Def.'s Objection Reply") at 4, ECF No. 45, the Court finds the plaintiff's evidence not only troubling but relevant to the fee inquiry in this case because the District's consistently dismal track record compels the conclusion that higher fees may need to be awarded in IDEIA cases in order to ensure that competent counsel continues to be attracted to IDEIA litigation.

c)     *Complexity of the Litigation*

Finally, the Court will discuss the factor to which courts in this district have typically devoted the lion's share of their analysis in IDEIA attorney's fee disputes:  the complexity of the litigation.  The Supreme Court and the D.C. Circuit have identified the complexity of the litigation as a relevant consideration in awarding reasonable attorney's fees.  *See, e.g.*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (holding that "[t]he 'novelty [and] complexity of the issues'" should be "fully reflected" in a reasonable fee award); *Covington*, 57 F.3d at 1108.  In the context of IDEIA cases specifically, decisions from this Circuit have identified a number of indicia of complexity, such as (1) the length of the administrative hearing; (2) the number of documents and witnesses presented at the administrative hearing; (3) the amount of discovery required; (4) the presence of novel legal

issues; (5) the quantity of briefing required; and (6) the use of expert testimony.  *See, e.g.*, *Parks*, 2012 WL 4475681, at *6; *Fisher*, 2012 WL 3090308, at *5; *Garvin*, 851 F. Supp. 2d at 106–07; *Agapito v. District of Columbia*, 525 F. Supp. 2d 150, 152 (D.D.C. 2007).

The instant action, unlike most IDEIA fee-dispute cases, involved substantive disputes at both the administrative level and the federal level.  The plaintiff was denied relief at the administrative level and essentially appealed that determination to this Court.  *See* Compl. ¶ 10. As a result, in assessing the complexity of this case, the Court must consider both aspects of the litigation.  The administrative portion of the litigation was of only modest complexity.  At the administrative stage, Mr. Tyrka's work involved the filing of a three-page due process complaint; submitting a three-page pre-hearing memorandum and a three-page opposition memorandum; and attending a two-hour hearing at which only two witnesses testified and only eighteen total documents were submitted.  *See* Admin. Record ("AR") at 4–10, 120–22, 136–39, 146–258, ECF Nos. 7-1, 7-3 to 7-7.  Although only two witnesses testified at the administrative hearing, it bears noting that one of the witnesses was a special education advocate, called by the plaintiff, who was qualified as "an expert on the development of IEPs and the development of compensatory education plans."  Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Summ. J. Mem.") at 7, ECF No. 8.  All of this resulted in a six-page, single-spaced Hearing Officer's Determination ("HOD").  *See* AR at 4–10.

Although the administrative portion of this case lasted only about two and one-half months, the case lasted much longer in its entirety.  Once the action was filed in this Court, the parties filed cross-motions for summary judgment regarding the merits of the plaintiff's IDEIA claims.  *See* ECF Nos. 8, 11.  Additionally, after the Court granted summary judgment to the plaintiff, the defendant filed a motion for reconsideration, and the plaintiff filed a motion to

substitute, which required two more rounds of briefing.  *See* ECF Nos. 23–25, 30–31.  These

four motions, altogether, resulted in a seventeen-page Report and Recommendation, *see* ECF No.

21, and a fourteen-page Memorandum Opinion, *see* ECF No. 32; *see also Brooks*, 841 F. Supp.

2d 253.  The defendant's motion for reconsideration was particularly noteworthy because it

required the parties to address an issue of first impression within this Circuit regarding whether a

former student retains the right to seek compensatory education under the IDEIA.  *See Brooks*,

841 F. Supp. 2d at 258–60.  From start to finish, beginning with the administrative due process

complaint and ending with the Court's Order on the motion for reconsideration, it took over two

years for the plaintiff to obtain the relief that she sought.

 In sum, even though the administrative portion of this case was largely routine, the action

in its totality was not uncomplicated.  Courts have often discounted the standard *Laffey* rates in

IDEIA cases that only "involve[] a routine administrative proceeding," and if that were all that

was involved in the instant action, a similar discount might be warranted.  *See, e.g.*, *Flores v.

District of Columbia*, 857 F. Supp. 2d 15, 21 (D.D.C. 2012).  The large majority of this action,

however, has been litigated in federal court, and the case contains sufficient indicia of

complexity—including (1) the preparation and presentation of an expert witness; (2) the filing of

four motions, including two motions for summary judgment; and (3) a question of first

impression under the IDEIA—to conclude that a discount from the *Laffey* rate would be

inappropriate.[8]  *See, e.g.*, *Jeppsen*, 686 F. Supp. 2d at 39 (applying full *Laffey* rates where "the

fees incurred in this case arise exclusively from federal litigation").

 In light of the above discussion, the Court concludes that the plaintiff has carried her

burden of establishing the reasonableness of the full amount of the *Laffey* rate, and the defendant

---

[8] This conclusion is further supported by the fact that the plaintiff's evidence of complexity has gone unrebutted by any evidence from the defendant other than its repeated and categorical assertion that IDEIA litigation is routine, simple, and undeserving of *Laffey* rates.

has failed to rebut the "presumption of reasonableness" with "specific contrary evidence." *See Covington*, 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326). Therefore, the Court concludes that the full amount of the *Laffey* rate is a reasonable hourly fee in this action, contrary to the conclusion reached in the R&R.

The two remaining issues that the Court must resolve with regard to the hourly fee are (1) whether the standard *Laffey* rate or the adjusted *Laffey* rate should apply and (2) whether the plaintiff should receive the *Laffey* rate that applied at the time the work was completed or the current *Laffey* rate.

### d)      *Standard vs. Adjusted Laffey Rates*

As discussed above, the difference between the two *Laffey* matrices is that the standard *Laffey* matrix grows at the rate of general cost-of-living inflation for the Washington, D.C. metropolitan area, as indicated in the Consumer Price Index ("CPI") for Washington, D.C. *See supra* note 2.  The adjusted *Laffey* matrix, on the other hand, grows at the rate of inflation in the legal services component of the national CPI.  *See id.*  Deciding which matrix to apply presents a "difficult issue" because, while the standard *Laffey* matrix "has the distinct advantage of capturing the data which is specific to the Washington, D.C., metropolitan area, as opposed to the [adjusted] *Laffey* index, which relies on [CPI] data from all over the country," the adjusted *Laffey* matrix "has the distinct advantage of capturing the more relevant data because it is based on the legal services component of the [CPI] rather than the general CPI on which the [standard *Laffey*] matrix is based." *Salazar*, 123 F. Supp. 2d at 14–15.

The parties have neither briefed this issue nor presented evidence regarding which *Laffey* matrix would be appropriate, and the R&R did not analyze this issue either.  Since the plaintiff bears the burden of justifying the reasonableness of the fee requested, however, the absence of evidence on this issue necessarily militates in favor of awarding the plaintiff the lower of the two

rates.  As a result, the Court will, in line with the R&R, award the plaintiff the standard *Laffey*

rate, rather than the adjusted *Laffey* rate.

> e)     *Current Laffey Rate vs. Laffey Rate at the Time Work Was Completed*

The final issue presented regarding the appropriate hourly rate to apply is whether the

plaintiff should receive the *Laffey* rate that applied at the time the work was completed or the

current *Laffey* rate.  The R&R recommended that the Court use the rate that applied at the time

the work was completed.  *See* R&R at 6–7.  The plaintiff objects, however, that this

recommendation was error because "current rates are typically paid for all work to account for

the delay in payment."  Pl.'s Objection at 14 (citing *Missouri v. Jenkins*, 491 U.S. 274, 284

(1989) and *Copeland v. Marshall*, 641 F.2d 880, 893 n.23 (D.C. Cir. 1980) (en banc)).  The

Supreme Court has held that "compensation received several years after the services were

rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the

legal services are performed," and therefore "an appropriate adjustment for delay in payment—

whether by the application of current rather than historic hourly rates or otherwise—is within the

contemplation of [fee-shifting] statute[s]."  *Jenkins*, 491 U.S. at 283–84.  The D.C. Circuit has

endorsed a similar approach.  *See Copeland*, 641 F.2d at 893 ("A percentage adjustment to

reflect the delay in receipt of payment therefore may be appropriate.").

The services provided by Mr. Tyrka in this action were rendered between September

2009 and March 2012.  *See* Pl.'s Mot. Ex. 1.  Therefore, for some of these services,

compensation will be received, if at all, "several years after the services were rendered."

*Jenkins*, 491 U.S. at 283.  More fundamentally, however, the economic premise behind the

Supreme Court's holding in *Jenkins* and the D.C. Circuit's holding in *Copeland* was that it is

only fair to award attorneys the present value of the services that they rendered.  As the Circuit

noted in *Copeland*, "payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable."  641 F.2d at 893.  The defendant has presented no authority, legal or economic, that would contradict the Circuit's rationale in *Copeland*, and therefore the Court will award the plaintiff the current *Laffey* rate for services rendered.  *See also Fisher*, 2012 WL 3090308, at *5 (awarding current *Laffey* rates where "defendant feebly trie[d] to distinguish [*Jenkins* and *Copeland*]," but "fail[ed] to meaningfully do so and further fail[ed] to cite any legal authority to the contrary").

* * *

In summary, the Court concludes that the standard *Laffey* rate, commensurate with Mr. Tyrka's legal experience (11–19 years), is a reasonable fee for the plaintiff to recover in this case.  Furthermore, the Court concludes that the plaintiff should be awarded the current *Laffey* rate, rather than the *Laffey* rate that applied at the time the work was performed.  Therefore, the reasonable hourly rate that will apply in the lodestar calculation will be $445 per hour, rather than the $307.50–$326.25 proposed in the R&R.  *See* Pl.'s Reply to Def.'s Opp'n to Mot. for Fees & Costs Ex. 2, ECF No. 39-2 (setting forth standard *Laffey* matrix).

### B.   **Hours Reasonably Expended**

Having determined the reasonable hourly fee that will apply, the Court must now address the plaintiff's objections to the R&R regarding the number of hours reasonably expended.

"To satisfy the burden of showing that the hours claimed were reasonably expended on a case, a petitioner must submit 'sufficiently detailed information about the hours logged and the work done,' and 'it is insufficient to provide the . . . Court with very broad summaries of work done and hours logged."  *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996)

(quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327).  The fee application, however

"need not present 'the exact number of minutes spent nor the precise activity to which each hour

was devoted nor the specific attainments of each attorney.'"  *Nat'l Ass'n of Concerned Veterans*,

675 F.2d at 1327 (quoting *Copeland*, 641 F.2d at 891).  "The touchstone inquiry is whether the

time expended on particular tasks was reasonable.  Parties cannot be reimbursed for

nonproductive time or duplicative activities.  However, contests over fees should not be

permitted to evolve into exhaustive trial-type proceedings." *Martini v. Fed. Nat'l Mortg. Ass'n*,

977 F. Supp. 482, 487 (D.D.C. 1997) (citations and internal quotation marks omitted).  As one

Judge from this Circuit has stated in the context of fee petitions, "[n]either broadly based, ill-

aimed attacks, nor nit-picking claims by the Government should be countenanced." *Nat'l Ass'n*

*of Concerned Veterans*, 675 F.2d at 1338 (Tamm, J., concurring).

     In the instant action, the plaintiff has presented a reasonably detailed itemization of the

tasks that Mr. Tyrka performed and for which the plaintiff seeks attorney's fees.  *See* Pl.'s Mot.

Ex. 1.  The itemization seeks payment for 71 total hours of work performed exclusively by Mr.

Tyrka.  *See id.*  The R&R proposed two specific reductions from this total, to which the plaintiff

objects.  First, the R&R docked the 13.75 hours spent by Mr. Tyrka in researching, outlining,

drafting, and filing the plaintiff's motion for summary judgment, noting that, "[a]part from the

facts, the procedural history of plaintiff's case . . ., and Tyrka's legal argument  . . . , the statutory

framework of the IDEA and the standards governing summary judgment are the same for every

one of Tyrka's clients." R&R at 12.  Therefore, the R&R concluded that "the research and

drafting of plaintiff's motion for summary judgment could have been performed in less time by

an attorney with Tyrka's experience," and recommended "that plaintiff be compensated for only

8.0 hours for this task, rather than the 13.75 hours sought." *Id.* at 11–12.  Second, the R&R

deconstructed the 6.5 hours charged for drafting and preparing the plaintiff's petition for attorney's fees, concluding that "this petition is the same for every one of Tyrka's clients" and thus "it should not have taken an attorney with Tyrka's legal experience . . . 6.5 hours to complete." *Id.* at 13. As a result, the R&R proposed that the hours charged for that task "be reduced to 3 hours." *Id.*

The plaintiff objects to both of these proposed reductions. With respect to the motion for summary judgment, the plaintiff complains that the R&R improperly characterized the statement of material facts contained in the motion for summary judgment as "simple or boilerplate." Pl.'s Objection at 14. The plaintiff contends that "[t]he statement of material facts is arguably the most important part of a summary judgment motion," and therefore "its production requires a careful examination of the entire record." *Id.* at 14–15. Furthermore, the plaintiff calculates that the summary judgment brief contained "6 pages of simple work and 15 pages of more complicated work," which yield a billing rate of approximately "49 minutes per substantive page." *Id.* at 15. The plaintiff submits that this "is an extremely good pace." *Id.* The plaintiff offers a much briefer defense of Mr. Tyrka's charges related to the fee petition, arguing only that the 6.5 hours billed are reasonable because the plaintiff "made no claim for the work performed on the 9-page Reply regarding fees, the large majority of which was specific to this case." *Id.* In other words, the 6.5 hours billed encompasses both the petition for fees as well as the reply in further support of that petition.

The Court agrees with the plaintiff that the hours sought for Mr. Tyrka's work on the plaintiff's motion for summary judgment and petition for fees was reasonable. In this regard, the Court heeds the words of the Supreme Court that "trial courts need not, and indeed should not, become green-eyeshade accountants" when it comes to determining the reasonableness of fee

petitions.  *Fox*, 131 S. Ct. at 2216.  The goal in shifting fees, the Supreme Court reminds us, "is

to do rough justice, not to achieve auditing perfection."  *Id.*  The R&R may be correct that it

would have been *possible* for an attorney of Mr. Tyrka's experience and skill to complete these

tasks in a shorter amount of time, but such an exacting scrutiny of an attorney's bill is akin to a

quest for "auditing perfection," rather than the more appropriate goal of "do[ing] rough justice."

*Id.*  The hours sought by the plaintiff are not excessive, and therefore the Court sustains the

plaintiff's objections to the R&R's proposal to reduce the hours charged for both tasks.

## IV.      CONCLUSION

To summarize, the Court sustains the plaintiff's objections to the Report and

Recommendation and concludes that (1) the current (*i.e.*, 2012–13) rates contained in the

standard *Laffey* matrix are reasonable and (2) the hours itemized by the plaintiff in her petition

for fees are also reasonable.  Therefore, the plaintiff shall be awarded attorney's fees for 71 hours

of work at a rate of $445 per hour, totaling $31,595.  The plaintiff shall also be awarded the

undisputed amount of $350 for the cost of the federal filing fee in this action, bringing the total

award of fees and costs to $31,945.  Finally, the Court adopts all other recommendations of the

R&R.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.


Date: December 17, 2012


/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge